**SOUTHERN WABASH COMMUNICATIONS, LTD, Plaintiff–Appellant,**

v.

**UNION COUNTY BROADCASTING COMPANY, INC., and J.B. Crawley, Defendants–Appellees.**

No. 02–5006.

United States Court of Appeals, Sixth Circuit.

July 2, 2003.

Before: CLAY and GIBBONS, Circuit Judges; and DUGGAN,* District Judge.

DUGGAN, District Judge.

Plaintiff–Appellant, Southern Wabash Communications, LTD (Wabash or Appellant), appeals the district court's denial of summary judgment and dismissal of Wabash's state law contract claims against Defendants–Appellees, Union County Broadcasting Company, Inc. (Union County), and J.B. Crawley (Crawley)(collectively Appellees). Wabash's claims arise out of Appellees' alleged breaches of two contracts, which the parties entered into for the sale of a radio station owned by Union County. Wabash also brought a tortious interference with a contract claim against

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

Crawley. The district court initially denied the parties' respective motions for summary judgment, then later dismissed Wabash's claims, upon Appellees' motion, for failure to comply with the court's orders. For the reasons set forth below, we AFFIRM the district court's orders.

## Background

This case arises out of Wabash's attempt to purchase two radio stations from Union County.[1] The parties executed two agreements for the purchase of the radio stations, an Asset Purchase Agreement (APA) and a Local Marketing Agreement (LMA). The APA dealt with the transfer of real and personal property associated with the radio stations, as well as Federal Communications Commission (FCC) licenses. The LMA, on the other hand, dealt with the parties' rights and duties concerning operation of the radio stations during the purchase period. In other words, the APA dealt with the actual purchase, and the LMA dealt with what would happen at the radio stations because of the purchase.

The APA provides that the parties would "join in and file" an application to the FCC for transfer of Union County's FCC licenses. The APA further provides, in relevant part, that either party could terminate the agreement upon notice if the FCC application did not "become a Final Order within . . . six (6) months after the Application is tendered for filing with the FCC if the Application is uncontested. . . ." The application in question was tendered for filing on March 27, 2000. On August 22, 2000, Union County notified Wabash, in writing, that it was terminating the APA pursuant to Paragraph 9 of the APA. which provides for termination as quoted above.[2] Wabash then brought the instant suit.

At the outset, the district court granted Wabash a temporary restraining order regarding provisions of the LMA. Wabash was later denied a preliminary injunction on the same issue. After this denial, both parties filed motions for summary judgment. The district court found a genuine issue of fact existed and denied both motions for summary judgment. The district court then issued orders relating to discovery deadlines and related filings with the court. After Wabash failed to comply with the district court's orders. Appellees moved for sanctions, including dismissal, which the court granted. The suit then proceeded on Appellees counterclaims for damages. This appeal followed.

## Discussion

Wabash appeals both the district court's denial of its summary judgment motion and the district court's grant of Appellees' motion to dismiss. Each order is discussed in turn.

### Summary Judgment:

■ This Court reviews a grant of summary judgment de novo. *Black v. Roadway Express, Inc.*, 297 F.3d 445, 448 (6th Cir.2002) (citation omitted). A district court's denial of summary judgment, however, is reviewed de novo if the denial is based purely on legal grounds, and for an abuse of discretion if the denial is based on there being a genuine issue of fact. *Id.* In the case at bar, the district court denied the parties' motions for summary judgment because the court found that a genu-

---

1. Crawley is the president of Union County.

2. According to Wabash, it is undisputed "that the FCC's consent could not become a 'final order' under the terms of the contract by September 27[,]" 2000, which would have been six months from the date the application was tendered.

ine issue of fact existed. Therefore, our review is for an abuse of discretion.

An abuse of discretion occurs when the district court "relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Adcock–Ladd v. Secretary of Treasury,* 227 F.3d 343, 348–49 (6th Cir. 2000) (citations and quotations omitted). This Court may also find the lower court abused its discretion if this Court "is firmly convinced that a mistake has been made." *Id.* at 349(citations and quotations omitted).

Wabash appeals the district court's denial of summary judgment both on Wabash's claim regarding the APA and its claim regarding the LMA. For the APA, Wabash essentially argues that "[t]he failure of the grant of the applications to become a Final Order within the specified time period did not constitute a material breach of the contract entitling Appellee to the extraordinary remedy of rescission." Wabash acknowledges that the FCC application became a final order, as that is defined by the APA,[3] "fifteen days outside the six-month time limit set forth in the" APA, but argues that "[p]ursuant to well-established Kentucky law, Appellee was not entitled in any way to rescind the [APA] because of the failure of the parties to meet time limits set forth in the contract." In support, Wabash cites *United States ex rel. Ken's Carpets Unlimited, Inc. v. Interstate Landscaping Co., Inc.,* 1994 WL 481684, 1994 U.S.App. LEXIS 24419 (6th Cir.1994)(unpublished)(*Ken's Carpets* ).

Relying on *Ken's Carpets,* Wabash argues that the district court erred by not addressing "the materiality of the six-month provision....." Wabash's argument and reliance on *Ken's Carpets* is misplaced. *Ken's Carpets* involved the issue of whether a late payment constituted a material breach of the parties' contract. The issue in this case is not one of material breach, but rather proper termination.

Union County sent Wabash a letter on August 22, 2000, stating it was terminating the APA "pursuant to paragraph 9 of the" APA. Paragraph 9 of the APA provides:

> In the event that grant of the Application by the FCC has not become a Final Order within (a) six (6) months after the Application is tendered for filing with the FCC if the Application is uncontested, or (b) in the event Station's FCC License is forfeited, lapses or is denied for any reason, either Buyer or Seller may thereafter terminate this Agreement upon ten (10) days written notice to the other party.

Reading the letter and the APA together, it is clear that Union County did not attempt to rescind the APA because of a breach on Wabash's part, but rather decided to exercise its right to terminate under Paragraph 9 of the APA. As such, the district court did not err in not discussing the materiality of any breach, as no breach was alleged in the August 22, 2000, letter terminating the APA.

It is undisputed that at the time the August 22, 2000, letter was sent, the facts were such that the parties knew the Application would not become a Final Order

---

**3.** At oral argument, Wabash intimated that there is a question regarding what constitutes a "final order" under the APA. Wabash did not brief this issue; rather, Wabash merely made statements in its Brief regarding what a "final order" means and that, essentially, the order became final in this case fifteen days outside the six-month limitation set forth in

the APA. Because this issue was not briefed, and because Wabash's Brief essentially concedes this point, this Court will not consider the matter further. *See Reithmiller v. Blue Cross & Blue Shield of Michigan,* 824 F.2d 510, 511 n. 2 (6th Cir.1987) (citations omitted).

within six months of the time the Application was tendered, March 27, 2000. It is also undisputed that Union County sent several letters to the FCC regarding the Application. The district court decided that because there was an issue of fact "as to whether, absent [Union County's] letters to the FCC, the application would have achieved the requisite finality within the six-month period[,]" it could not grant summary judgment to either party.

Wabash has not cited any law that would purport to require a materiality analysis when a contract provides for termination by either party if an event does not occur within a specified time. As stated above, the case Wabash seeks to rely on deals with late payments and breach, not termination pursuant to a specific provision of the parties' contract. In terminating the APA, Union County did not claim Wabash had breached the agreement, nor did Union County assert that it was rescinding the APA; rather Union County terminated the contract pursuant to the terms of the APA.

In Kentucky, although "[i]t is elementary that a contract may not be rescinded unless the non-performance, misrepresentation, or breach is substantial or material[,]" *Fay E. Sams Money Purchase Pension Plan v. Jansen, et al.*, 3 S.W.3d 753, 757 (Ky.Ct.App.1999) (citation omitted), it is also "a well-settled rule of law that a right to cancel a contract, incorporated or reserved therein, is a part of the contract itself, and, upon the exercise of such contractual right, all obligations under the contract cease and determine, and no liability arises from the cancellation." *Ford Motor Co. v. Alexander Motor Co.*, 223 Ky. 16, 2 S.W.2d 1031, 1032 (Ky.Ct.App.1928) (citation omitted). Because the case at bar involves termination pursuant to a specific provision of the contract at issue, and not recision based upon a breach, no materiali-

ty analysis is necessary. Therefore, the district court did not abuse its discretion in denying Wabash's summary judgment motion on its breach claim regarding the APA.

■ Wabash's arguments regarding its claims under the LMA are also without merit. Wabash again argues that the district court erred by not applying rescission law to the LMA and not granting Wabash summary judgment. Wabash essentially argues that Appellees were not entitled to rescind the LMA due to any alleged breaches by Wabash because Wabash was entitled to cure the breaches; therefore, the district court erred in not granting Wabash summary judgment on its claims regarding the LMA.

A review of the district court's opinion reveals that the court agreed with Wabash regarding its alleged breaches of the LMA. The district court stated, in regard to the breaches alleged by Appellees regarding the LMA, that "some of the breaches were timely cured by the Plaintiff; others were not breaches at all but rather obligations of the Defendant; and still others, even if proven, were not material." The court concluded, however, that "any breaches of the LMA, even of [sic] proven by the Defendant, are irrelevant to the primary issue in this case; namely, whether the Plaintiff is entitled to specific performance of the APA, or whether the Defendant is entitled to terminate the APA." The district court did not abuse its discretion in reaching this result.

As the district court stated at the outset of its LMA discussion, the LMA provides for automatic termination of the LMA in the event the APA terminates. The LMA provides:

This Agreement automatically terminates in the event the [APA] entered into by the parties concurrently with this Agreement is either consummated

through a Closing under the APA or is otherwise terminated pursuant to the terms of the APA.

Under this provision, if Union County properly terminated the APA on August 22, 2000, then the LMA was properly terminated as well. Therefore, because an issue of fact remained regarding whether Union County properly terminated the APA on August 22, 2000, the district court could not have granted Wabash summary judgment on its breach of contract claim regarding the LMA. Accordingly, the district court's denial of summary judgment on this issue was not an abuse of discretion.

### Dismissal:

██ The district court dismissed Wabash's claims, upon motion of Appellees, because Wabash had failed to adhere to the court's Order. Union County brought its motion pursuant to Federal Rules of Civil Procedure 16 and 37. The court, in dismissing Wabash's claims, discussed Rules 16 and 37. Wabash appeals the court's decision and argues the district court abused its discretion in dismissing the case under Rule 41. Although Wabash is mistaken regarding under which Rule the district court dismissed its claims, this Court's analysis is the same.

The district court's dismissal under Rule 37 is reviewed for an abuse of discretion. *Sommer v. Davis,* 317 F.3d 686, 692 (6th Cir.2003). Whether the district court dismissed the action under "Rule 37(b)(2) or Rule 41(b), we consider four factors: (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." ' *United States v. Reyes,* 307 F.3d 451, 458

(6th Cir.2002)(quoting *Knoll v. AT & T,* 176 F.3d 359, 363 (6th Cir.1999)). Furthermore, Wabash "has the burden of showing that his failure to comply was due to inability, not willfulness or bad faith." *Reyes,* 307 F.3d at 458. A district court does not abuse its discretion in dismissing a case "if the party has the ability to comply with a discovery order but does not." *Id.*

On May 14, 2002, the district court entered a Scheduling Order. This Order set September 10, 2001, as the deadline for filing witness and exhibit lists, and November 5, 2001, as the trial date. Wabash failed to comply with this Order, and Appellees moved for sanctions. Wabash did not respond to Appellee's Motion.

On October 19, 2001, Wabash moved to "Continue Trial and Extend Time Limits." In this Motion, Wabash claimed that it needed a court order to obtain depositions of FCC personnel in order to prove its claim regarding the APA. Wabash claimed that the FCC personnel had "been wholly unresponsive to inquiries...." Wabash claimed it could not comply with the court's Scheduling Order because it had "not yet identified all witness who have knowledge of the facts of this case." At the time of filing its Motion, Wabash claimed it "simply [was] unable to comply with the [district court's] disclosure requirements, and is not prepared for trial on November 5." Wabash also claimed that it wanted to depose an attorney who had represented Appellees in another issue before the FCC.

For the first factor, whether Wabash's failure is due to willfulness or bad faith, Wabash argues that it is not because "Appellant and its counsel simply couldn't reach anyone at the FCC to discuss the case, even though it attempted to do so and left several messages." The Schedul-

ing Order was entered in May setting a deadline for witness lists in September. Wabash fails to offer any argument why in four months, all it did was make phone calls and leave messages. In its motion for continuance, it stated that it needed more time so that it could get a court order allowing it to depose FCC personnel. Wabash has failed to provide any argument as to why it did not seek such an order from the court prior to the deadline. In fact, Wabash did not even seek the continuance until well over a month after the deadline passed. As stated above, the district court's dismissal is presumed to not be an abuse of discretion unless Wabash meets its burden of showing its failure was due to inability. Wabash's arguments fail to meet this burden.

The district court found that a delay in the proceedings prejudiced Appellees because Appellees would continue to incur attorneys fees and because the management of the radio stations in question was hindered by questions regarding its ownership. Wabash argues that Appellees had run the radio stations for more than a year and would continue to run them; therefore, a delay would not prejudice them. Furthermore, Wabash argues that the trial would have been delayed in any event because the district court had a criminal trial scheduled for November 5 as well. Although the prejudice factor is a close call in this case, the fact that Wabash cannot meet its burden regarding its failure to comply overshadows any weight in favor of Wabash from this factor.

Wabash argues, under the third prong, that it had no notice or warning about the dismissal. This contention is without merit. Appellees' Motion specifically requested dismissal as a possible sanction. Therefore, Wabash had "some notice" of the possible dismissal. *Reyes*, 307 F.3d at 458.

Finally, Wabash argues "no less drastic sanctions [were] imposed or even considered by the trial court before the matter was dismissed. This contention is without merit. The district court did consider less severe sanctions and stated:

Although the Court recognizes that dismissal is the ultimate sanction for the Plaintiff's failure to comply with the Court's orders and should not be granted lightly, FED.R.CIV.P. 16(f), it believes it to be the appropriate sanction in this case. The plaintiff's failures have rendered the Defendant unable to adequately prepare for trial, and the Court believes that the Defendant would be unfairly prejudiced by any continued delay.

Although the Court could portray its ruling in a number of different ways, the end result would be the same in any event. The Court could strike the pleadings, or prevent the Plaintiff from supporting its claim or from introducing certain evidence. FED.R.CIV.P. 37(b)(2)(B-C). However, the Plaintiff readily admits that it currently has no evidence to support a verdict on an essential element of its claim. The Court can not strike evidence or testimony which does not yet exist. Regardless of how the ruling is characterized, the fact remains that the Plaintiff simply can not prevail on its claim at trial.

No less drastic alternative is reasonably available here. One alternative would be to continue trial, re-open discovery to allow the Plaintiff to attempt to gather evidence to support its claim, enter a new scheduling order, and set a new trial date. As discussed above, this alternative bestows too much prejudice upon the Defendants. The Court notes that the additional discovery time is not sought merely to gather evidence known to exist. To the contrary, the Plaintiff

needs additional discovery to ascertain *whether* the evidence exists. That is what the discovery period was for. To allow the Plaintiff's request would effectively render this Court's discovery and trial deadlines meaningless.

The other alternative would be to hold the parties to the November 5 trial date. That alternative would require the Defendants to wait until trial to see what evidence the Plaintiff put forth, then react on-the-fly. This is the type of trial by ambush that modern federal discovery rules and pre-trial filing orders were designed to prevent. The Court believes that dismissal is not only the least drastic alternative, it is the only reasonable alternative.

As indicated by this quote, the district court thoroughly considered other available sanctions. Furthermore, even if the district court had not considered other sanctions, "this is not necessarily an abuse of discretion." *Reyes,* 307 F.3d at 458. Although we recognize the sanction imposed by the district judge may, in view of some judges, be unnecessarily harsh, and that some judges may well have selected a sanction other than dismissal, nevertheless, we feel that given the discretion to which the district judge is entitled, we cannot say that the district judge abused his discretion. Therefore, the district court's orders are **AFFIRMED**.