**In re LTV STEEL COMPANY,
INC., et al., Debtors.**

**No. 00–43866.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Jan. 6, 2004.

Shawn J. Organ, Jones, Day, Reavis & Pogue, Columbus, OH, Counsel for LTV.

Robert W. McIntyre, McIntyre, Kahn, Kruse & Gillombardo, Cleveland, OH, Counsel for C & K Industrial Services Inc.

## MEMORANDUM OF DECISION

RUSS KENDIG, Bankruptcy Judge.

This matter is before the court upon LTV Steel Company, Inc.'s (hereafter "LTV" or "Debtor") Combined Motion to Dismiss C & K Industrial Services, Inc.'s Claim for Delay, Discovery Abuse, and Failure to Comply with Scheduling Orders. Motion in Limine as to C & K's Undisclosed Trial Exhibits, and Objection to C & K's Motion for Further Extension of Time. (hereafter "Motion to Dismiss"). C & K Industrial Services, Inc. (hereafter "C & K") responded and LTV replied.[1]

Prior to the filing of its Motion to Dismiss, LTV filed a Motion in Limine regarding Third Party Price Rates and Rule 1006 Summary of Price Rates.

### Procedural History

On March 7, 2002, the court established May 20, 2002 as the administrative trade claims bar date. On May 20, 2002, C & K filed an Application for Administrative Expenses Trade Claim in the amount of $1,899,064.23. On August 30, 2002, LTV filed its Omnibus Objection to certain trade claims, including an objection to C & K's claim. On September 30, 2002, C & K

filed its response to the Omnibus Objection.

This court entered a Scheduling and Trial Order on April 29, 2003 (hereafter "Trial Order"), setting the date for a hearing on LTV's Omnibus Objection to C & K's trade claim for July 21, 2003. This hearing could not go forward due to C & K's failure to comply with discovery requests and the court's Trial Order. The court set a new trial date of September 11, 2003. After several motions for extension of time by C & K to respond to various evidentiary motions and further discovery disputes, LTV filed its Motion to Dismiss. The court continued the trial pending the resolution of LTV's motion.

### Jurisdiction

The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district on July 16, 1984. This is a core proceeding over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

### ARGUMENTS

In its Motion to Dismiss, LTV argues that C & K's claim should be dismissed for its failure to comply with the court's Trial Order. LTV correctly states that the Trial Order warned that failure to comply could result in summary disposition of the case. LTV further argues that C & K's claim should be dismissed because it engaged in discovery abuse in that it has not produced its president, Art Karas, for deposition and has failed to produce the database underlying its third party pricing summaries. Additionally, LTV asserts prejudice because C & K's failure to produce its trial exhibits or the database underlying its third party pricing summaries

---

1. When describing the actions of the parties in this case, the court will refer to the name of the party rather than the name of the law firm that represents them. This approach is consistent with our representative system of justice.

has limited LTV's ability to prepare effective cross-examinations, prepare rebuttal evidence, or effectively challenge the content and methodology of the pricing summary. Further, LTV argues that C & K's failure to produce Art Karas for deposition or produce the documents which support his testimony undermine LTV's ability to challenge his testimony. Also, LTV alleges that C & K had LTV's trial exhibits for an extended period of time, while LTV never received C & K's trial exhibits. Finally, LTV argues that by continually requesting extensions of time, C & K placed LTV in the position of acceding to a further continuance of the trial since LTV would have only two days to reply to C & K.

In its reply, C & K accuses LTV of misrepresenting the facts and states that LTV has no legal basis for its motion. C & K states that in order for a case to be dismissed for discovery violations, there must have been a court order which compelled discovery, and the party whose case is being dismissed must have failed to comply and such failure must be attributable to willfulness or bad faith. C & K asserts that it has not violated any court order because no such order exists. C & K further asserts that its conduct does not amount to bad faith. C & K argues that it has made all of the requested documents available since the inception of the case. C & K posits that LTV wanted to peruse its database rather than look over the physical documents which were provided to it. C & K states that these documents were used to make its third party pricing summary, not the database. LTV, it is asserted, was too lazy to travel to the place where C & K had stored the documents and look through these documents. Rather, C & K argues that LTV wanted C & K to convert these documents into an electronic format for LTV's convenience.

C & K further argues that even if the court issued a discovery order over a year ago, it could not be relevant to this current discovery dispute which originated six months thereafter. Regarding the documents that LTV alleges that C & K did not produce, C & K states that many of these were in the files of both C & K and LTV. Additionally, C & K made many requests for LTV to get a protective order before it would turn over some documents, and after such an order was executed in July 2003, C & K did turn over documents. C & K also argues that LTV has created a situation where it cannot depose Art Karas. By refusing to examine paper documents and insisting on looking at a database before deposing Art Karas, LTV made it impossible to depose Mr. Karas since the database does not exist.

C & K responded to the allegation that it did not comply with the court's Trial Order as follows. First, LTV was not prejudiced by the lack of production of these exhibits since LTV knew what they were and the exhibits came primarily from LTV's own files. Second, attorneys Dean and McIntyre spoke with the court's staff counsel who stated that since the trial was continued, the exhibits did not have to be filed on July 18. Finally, since the second trial was continued prior to the date that the exhibits were due, these exhibits did not have to be produced at that time.

In its reply, LTV argues that a violation of a discovery order is not necessary to dismiss a case under Federal Rule of Civil Procedure 37(d) where a party does not provide adequate answers to discovery requests or make a witness available for deposition. LTV argues that dismissal under this rule is proper since C & K has failed to produce Art Karas for deposition and because the responses to LTV's interrogatories were incomplete and evasive. LTV reasserts that the court can dismiss

C & K's claim for its failure to comply with the April 29 Trial Order. LTV argues that even if the court's staff counsel did state that the exhibits did not have to be filed on July 18, staff counsel lack the authority to sua sponte issue extensions. Further, even if staff counsel did say this, it was after the trial had been continued due to the failure to file the exhibits.

## ANALYSIS

The issues relating to whether this case should be dismissed break down into two general areas: C & K's discovery abuses and C & K's failure to comply with the court's Trial Order.

### A. C & K's Discovery Abuses

Much of the discovery dispute between LTV and C & K revolves around third party price rates. To understand why these rates are important, it is necessary to understand the nature of the dispute between the parties. C & K's administrative claim is for the amount of $1,899,064.23, a portion of which is agreed to by LTV. Much of this claim is based on an "Efficiency Bonus." C & K provided services to LTV and was to receive a bonus if it held costs down. The Efficiency Bonus was calculated by taking annual cost targets and subtracting from them the actual costs of C & K's services. C & K would be entitled to an efficiency bonus for a portion of these savings. Part of C & K's argument that it is entitled to the Efficiency Bonus is that it supplied services to LTV at below market rates. These below market rates gave value to LTV's estate, thus entitling C & K to its Efficiency Bonus. LTV asserts that there was no efficiency; plant closures and a reduced need for C & K's services were the reason costs declined.

### 1. Facts surrounding discovery

LTV disputes that it received services from C & K at below market rates and served interrogatories upon C & K on January 31, 2003 to explore the issue. These interrogatories requested information about C & K's contracts and pricing with third parties so that LTV could verify whether it was billed at a lower rate than others contracting with C & K. The interrogatories were worded as follows. Interrogatory two, "IDENTIFY any and all contracts under which C & K agreed to provide services to any customer from the PETITION DATE to the present." Interrogatory three, "IDENTIFY all C & K proposals made to customers or potential customers that contained any pricing of C & K services or products from the PETITION DATE to the present." Interrogatory four, "IDENTIFY the hourly rate that C & K charged to its clients, other than LTV, from the PETITION DATE to the present for the following services: [list of services]." Further, LTV's first request for production sought all documents identified in responses to interrogatories. Although broad, these discovery requests directly relate to a critical issue in the administrative claim hearing: whether C & K billed LTV at rates that were below market rates, entitling it to an efficiency bonus.

When C & K responded to LTV's discovery requests *almost two months later* on March 20, 2003, rather than answering the interrogatories, it objected to each on three grounds. First, that the requests were overly broad with respect to the terms "any contract" and "any services." Second, that the interrogatories called for the disclosure of trade secret information. Third, that the interrogatories were so broad that they would not lead to relevant evidence and that the information could be

obtained by requesting summaries or other compilations.

Responding to these objections on April 16, 2003, LTV stated that it would be willing to agree to a protective order to preserve C & K's trade secrets. LTV also requested that C & K produce the summaries as it stated that it would in its objections. On May 6, C & K responded by stating that LTV had requested thousands of pages of documents which were already in its files and that it was not C & K's responsibility to do LTV's homework. C & K also attached a draft of a protective order for LTV to sign. On May 28, LTV returned the protective order with minor changes and stated that it was acceptable. LTV also questioned why C & K would think that LTV would have information in LTV's files relating to C & K's other clients. Two weeks later, LTV sent a follow up letter reiterating that it remained ready to sign the protective order and requesting, again, adequate responses to the interrogatories sent nearly five months earlier. C & K sent a return letter on June 23rd stating that it had sent LTV a proposed protective order and that as soon as it received the signed order from LTV and it was filed, it would make available for inspection the appropriate records of commercial rates for the relevant time periods for the same services as provided to LTV. LTV responded on June 26 by sending the signed protective order. On July 8, less than two weeks before the trial, LTV's counsel called C & K's counsel to determine when the discovery would be sent. This conversation was memorialized in a letter sent to C & K in which LTV confirms that C & K would be sending the documents sought in interrogatories two through four by the end of the week.

On July 8, thirteen days before the trial was to begin, C & K sent a letter stating that it would *begin* preparing the documents requested in LTV's discovery. On July 11, in anticipation of receiving the documents, LTV noticed the deposition of Art Karas, C & K's president, who had stated that C & K offered LTV below market prices in a deposition taken on November 13, 2001. LTV informed C & K in a letter dated April 17, 2003, that it would re-depose Karas upon receiving responses to its discovery requests. On July 11 C & K finally responded, but not with the promised documents. Instead, C & K produced a summary of its price rates and stated that back up documentation was available for LTV's inspection and copying upon "the making of proper arrangements." C & K did not provide documents backing up its price rate summary as LTV asked for in its requests for production of documents.

In a letter dated July 15, C & K refused to produce Mr. Karas for deposition alleging the request to depose was untimely and unreasonable. Further, C & K stated that it had returned the requests for production "less than one week" after receiving the signed protective order from LTV. The letter alluded to the fact that LTV delayed in agreeing to the protective order. However, LTV's proposed changes to the order involved the immaterial correction of a signature line to reflect that Judge Kendig, not Judge Bodoh, was hearing the case. Also, approval lines for counsel's signatures were added. These are not the type of changes that should take a long time, nor would they require any significant negotiation.

One day later, July 16, C & K failed to produce its trial exhibits as required by the Trial Order. As a result, the court continued the trial and scheduled a status conference. On July 23, the court entered a Memorandum Order Following Status Conference. The Second Trial Order set the new trial date for September 11, 2003.

It also set a briefing schedule for C & K's motions in limine and dates for the resolution of a dispute regarding a Rule 1006[2] summary that had been submitted by C & K in response to LTV's interrogatories. If no resolution regarding the 1006 summary could be reached, LTV had until August 8 to file a motion and C & K had until August 18 to respond.

On July 28, LTV sent a letter to C & K attempting to resolve the ongoing discovery dispute regarding third party price rates. LTV requested access to a database with a datamap, which LTV alleges that C & K referred to during its status conference with the court. This request was made pursuant to Fed.R.Evid. 1006 which allows the use of summaries if the material summarized is made available to opposing counsel. The letter also repeated LTV's discovery requests in interrogatories two through four and reminded C & K that this court set a deadline of August 1 for the resolution of discovery disputes. LTV also repeated its request to depose Karas. On August 6, C & K sent a letter to LTV stating that it did maintain a database with pricing information, but that upon further review, that database was not used to prepare the summary. The letter indicated that C & K was compiling the information for LTV's onsite review. It asked for specific dates during which LTV could inspect the material. It was during this time that McIntyre, Kahn, and Kruse Co., L.P.A., counsel for C & K, introduced an additional attorney, Scott Dean, to the case. It took further time for Mr. Dean to become acquainted with the case.

LTV has not received full and complete responses to its interrogatories numbered one through four or requests for the documents underpinning the answers to these interrogatories.

## 2. Law Regarding Discovery Abuse

■ The proceeding between LTV and C & K is an objection to claim, which is a contested matter governed by Bankruptcy Rule 9014. Rule 9014(c) states that Bankruptcy Rule 7037 applies in all contested matters. Rule 7037 incorporates Federal Rule of Civil Procedure 37 ("Rule 37"), which provides in pertinent part:

> (d) If a party ... fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under sub paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule.

> Fed. R. Civ. P 37.

Subdivision (b)(2)(C) provides that a court may make "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding of any part thereof, or rendering a judgment by default against the disobedient party." *Id.* Although C & K argues that it must violate a court order compelling discovery in

---

2. This Order erroneously referred to the summary as a Rule 1004 summary. The Orders and pleadings related to this summary refer to it as either a Rule 1004 or a Rule 1006 summary. Of course, Fed.R.Evid. 1006 refers to summaries and their appropriate use as evidence. Therefore, this opinion will call the summary a Rule 1006 summary, regardless of the actual language used in the pleading or Order being discussed.

order for its case to be dismissed, this argument is incorrect. Rule 37(b)(2)(C) states that a court may dismiss for failure to comply with a discovery order. However, a court can also dismiss under Rule 37(d) even if a party has not violated a discovery order. *United States v. Reyes*, 307 F.3d 451, 457–58 (6th Cir.2002); *Special Service Delivery, Inc. v. Special Service Delivery Co., Inc. (In re Special Service Delivery, Inc.)*, 16 B.R. 714 (Bankr. N.D.Ohio 1982).

■■■■ Sanctioning a party for discovery abuse functions as both a punishment for the party committing the abuse and as a deterrent to others who might commit such abuse in the future. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). If a case is dismissed pursuant to Rule 37 sanctions, it should be on account of conduct due to willfulness, bad faith, or fault. *Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). The Sixth Circuit has articulated four factors that courts are to consider when deciding whether to impose the ultimate sanction of dismissal under Rule 37: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Reyes*, 307 F.3d at 458 (quoting *Knoll v. AT & T*, 176 F.3d 359, 363 (6th Cir.1999)). Willfulness has been defined as "A conscious or intentional failure to act, as distinguished from an accidental or involuntary noncompliance...." *Braxton v. Howard University*, 472 A.2d 1363, 1365 (D.C.1984). "Although no one factor is dispositive, dismissal is proper if the record demonstrates

delay or contumacious conduct." *Reyes*, 307 F.3d at 458.

■■■■ Moreover, the fact that the abusive discovery acts may have been committed by an attorney and not the client does not prevent a court from dismissing the case, even though the client suffers from this sanction as well as the attorney. As the Supreme Court stated, "Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation..." *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (rejecting the argument that dismissal of petitioner's claim based on counsel's inappropriate conduct unjustly penalized petitioner).

### a. Willfulness and Bad Faith with Regard to C & K's Evasiveness in Responding to LTV's Interrogatories and Requests for Production

In this case, C & K's failure to adequately respond to interrogatories or requests for production was certainly willful. Over nine months have passed since the requests were made and still the documents have not been delivered to LTV. C & K did eventually deliver a summary of the materials that LTV requested, but then failed to produce the documents which were used to produce this summary. It was these documents that were requested in the initial discovery requests.

Further, instead of making a good faith effort to comply with LTV's discovery requests, C & K offered arguments as to why it should not have to produce and keeps changing these arguments so that it is impossible for LTV to completely satisfy C & K. Thus, LTV can never receive the documents which it needs to see, because

as soon it resolves one of C & K's objections, another arises. First, C & K objected to the interrogatories themselves after taking almost two months to respond. In response, LTV offered to sign a protective order. Even though LTV agreed to sign a protective order and only requested minor, non-substantive changes in it, it took C & K over two months from the time LTV agreed to such an order to get this order signed. However, after LTV agreed to the protective order, C & K changed its tune, accusing LTV of requesting thousands of documents which were already in its files and stating that it was not its responsibility to do LTV's homework. This argument is ridiculous when one considers that LTV was requesting contract and pricing information between C & K and *third parties*. It was impossible for LTV to be in possession of these files. Moreover, it is not per se objectionable to request documents that may be held by both parties.

On July 8, C & K sent a letter stating that it would *begin* preparing discovery. Then, instead of complying fully with LTV's discovery requests, C & K again shifted the source of the dispute by sending a Rule 1006 summary of its price rates instead of sending its contracts and offers to third parties. By sending the summary and not sending the documents which were used to make the summary as Rule 1006 requires, C & K set the stage for an entirely new series of arguments on the eve of trial. LTV now had to begin a different fight to gain access to the materials used to create the Rule 1006 summary. This new fight has lasted several months and is still not resolved. Unbelievably, C & K's final shift in its argument can be found in its response to LTV's motion to dismiss. C & K states that it has expressly and repeatedly made all documents requested available to LTV, but LTV chose not to inspect them.

C & K faults LTV for not bringing the discovery dispute to the court's attention until August, implying that this casts doubt on the validity of the dispute. However, it is because of C & K's tactics of shifting the source of the dispute that it was not brought to the court's attention earlier. LTV would be on the apparent cusp of getting the documents that it needed, when, suddenly, the dispute would flare up again in a totally different direction.

■ The ground shifting tactics of C & K demonstrate willfulness and bad faith.[3]

---

**3.** Although not directly relevant to C & K's discovery abuses, C & K's constant delaying tactics merit note. On July 11th, only ten days before trial, C & K filed three motions in limine. Although C & K had the time to file three motions ten days before trial, it did not have time to submit its trial exhibits by the deadline specified in the Trial Order.

C & K's conduct leading up to the second trial date was even worse. Pursuant to the court's July 23 Order, LTV filed a motion in limine to exclude the Rule 1006 summary of third party price rates on August 8. LTV also filed a motion in limine to exclude the use of pretrial settlement communications to establish liability on August 7, 2003. Pursuant to Local Rule 9013–1(b), C & K had ten days to respond to these motions in limine. Thus, C

& K's latest response was to be submitted on August 18, 2003, twenty four days before trial.

Instead of responding to LTV's motions in limine, C & K filed repeated motions for extensions of time. Regarding LTV's motion concerning pretrial settlement communications, C & K filed its first motion for extension of time on August 14th, requesting until August 22nd to respond. On August 21st, C & K filed another request for extension of time, asking the court for permission to respond on August 28th. For its response to LTV's motion to exclude the Rule 1006 Summary, C & K filed three motion for extension of time. The first one was filed on August 18th, the second on August 25th, and the last on August 28th. The August 28th motion for extension of time requested until September 8th, *three days before trial*, to file a response. All five of

This was not a case of accidental or inadvertent noncompliance. C & K consciously and intentionally failed to adequately respond to LTV's discovery requests. By constantly shifting its ground, C & K assured itself that it would not have to respond to LTV's requests since it always had a fresh excuse as to why it need not comply. LTV was forced to wrestle a cloud. This is even more objectionable in the bankruptcy context. Everyone in the case is present because there is not enough money. LTV's creditors do not have money to waste with discovery games. The estate is administratively insolvent. Any money spent pursuing essential discovery is money that is not going to someone else.

### b. Prejudice

█ LTV was prejudiced by C & K's discovery tactics in this case. The discovery that C & K withheld is not peripheral to this dispute, it is central. C & K's contention that it offered its services to LTV at below market rates is material and the inability of LTV to examine the issue cripples LTV's ability to defend itself. Furthermore, to this day there has been no effort by C & K to fully comply with LTV's discovery requests or to produce the documents from which the third party pricing summary was created. LTV would be starting from square one in trying to make its case against C & K, whereas C &

K has had all the materials that it needs to proceed for some time. This has created a fundamental imbalance.

Furthermore, C & K's discovery abuses have resulted in prejudice against the administratively insolvent estate of LTV. LTV has spent many hours on this matter. The trial has already been continued twice, motions in limine have been filed and responded to, a motion to dismiss has been filed, and numerous letters have been sent to C & K to try and persuade it to respond adequately to LTV's discovery requests, all of which could have been avoided had C & K complied with its discovery obligations. All of LTV's creditors do not have the resources or obligation to continue with this charade for the benefit of one creditor.

### c. Notice to C & K of Potential for Dismissal

█ This court has not given C & K an explicit warning that if it did not comply with discovery its case would be dismissed. Nonetheless, C & K has received warning in the form of LTV's Motion to Dismiss. C & K was clearly put on notice that its case might be dismissed when LTV filed a motion to achieve this result. Even with such notice, C & K has still failed to respond to LTV's interrogatories or requests for production of documents, nor has it produced Art Karas for deposition. This type of notice of potential dismissal

---

these motions gave the same reason for the request for additional time: "due to the press of other litigation matters, additional time is needed to fully respond." C & K filed its response to the settlement communications motion in limine on September 4th. This response, which took twenty eight days to complete, was six pages long and contained one citation to case law. C & K filed its response to the Rule 1006 summary motion in limine on September 5th. This response, which also took twenty eight days to complete, was six pages long and contained no

citations to case law. It strains credulity to say that such short responses with almost no citations to case law required twenty eight days to complete, even with the press of other litigation matters. Even if LTV had not filed its motion to dismiss for delay and discovery abuse, C & K's delays in responding would have hindered the second hearing date, due to the difficulty created by response times. The entire pattern reveals that playing offense was firmly in the driver's seat while concepts of fundamental fairness were in the rumble seat, somewhere beneath the luggage.

has been held to provide "some notice" of a possible dismissal. *See United States v. Reyes*, 307 F.3d 451 at 458; *Southern Wabash Comm. Ltd. v. Union County Broadcasting Co., Inc.*, 69 Fed.Appx. 285, 291 (6th Cir.2003). Although "some notice" has been given to C & K of the possibility that its case might be dismissed, the court finds this notice to be questionable given the severity of the sanction of dismissal. This is not to say that no sanctions are warranted, but given the harshness of dismissal, a lesser sanction is more appropriate to cure the prejudice to LTV that C & K's conduct has created.

### d. Consideration of Lesser Sanctions

 Bankruptcy must be a more self regulating practice than other areas of law. Courts are given broad discretion is deciding what sanctions to impose under Rule 37. *See Beil v. Lakewood Eng'g and Mfg. Co.*, 15 F.3d 546 (6th Cir.1994) (court's decision to invoke Rule 37 sanctions is reviewed for an abuse of discretion). However, within this broad range of discretion, bankruptcy judges require maximum cooperation and tolerate minimum discovery disputes. This is because the nature of bankruptcy proceedings demands it. Within a given bankruptcy case, especially one as large as the LTV proceeding, there could be thousands of disputes. If parties in these disputes refused to cooperate with discovery to the extent that C & K has done in this case, litigation costs would swallow the estate (and the court) and there would be nothing left to distribute to creditors. Further, in most bankruptcy cases there is an expedited time frame. In chapter 11s, if some tasks are not accomplished expediently the plan could fail or the business might lose potential buyers. All of this is not to say that bankruptcy judges have unlimited discretion or that they are not bound by the same precedents. However, within the

broad range of discretion that is afforded judges regarding discovery disputes, bankruptcy judges focus their discretion more narrowly due to the necessarily expedited nature of bankruptcy proceedings.

The court would be within its discretion to dismiss C & K's claim for discovery abuse. However, given that the court did not specifically warn C & K that further failure to cooperate would result in dismissal, the court will impose a lesser sanction. Given that the discovery dispute revolves around third party price rates, it is hereby ordered that C & K shall not offer any evidence nor make any argument pertaining to rates paid by parties other than LTV or allege that LTV received favorable rates. This is one of the lesser sanctions allowed by Rule 37(b)(2)(B) and is a sanction especially appropriate to deal with C & K's action in this matter. C & K has denied LTV the benefit of reviewing its documentation on third party price rates, thus denying LTV the opportunity to refute whether it received below market pricing from C & K. However, this prejudice to LTV is remedied by disallowing the introduction of any evidence of third party price rates by C & K.

### B. C & K's Failure to Comply with this Court's April 29 Trial Order

As an independent ground for dismissal, the court is empowered by Bankruptcy Rule 7016(f) to use any sanction under Rule 37(b)(2)(B), (C), or (D) when a party does not comply with a scheduling order. Rule 7016 is made applicable to this proceeding by Rule 9014 which allows the court to "at any stage in a particular matter direct that one or more of the other rules in part VII shall apply." The court clearly directed in its Trial Order that Rule 7016 was applicable:

Pursuant to Fed. R. Bankr.P. 7016(f), if a party or counsel fails to obey a sched-

uling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney fails to participate in good faith, the court may impose sanctions on either the party or counsel, as provided in Fed. R. Bankr.P. 7037(b)(2)(B),(C),(D).

*FAILURE OF COUNSEL TO COMPLY WITH THIS ORDER MAY RESULT IN SUMMARY DISPOSITION OF THE CASE OR THE INVOCATION OF OTHER APPROPRIATE ACTION.*

It can hardly be disputed that C & K failed to submit its trial exhibits at the time designated in the Trial Order. The Order clearly states that the exhibits shall be "submitted to the court by not later than three (3) working days prior to the trial." The trial was set for Monday July 21, 2003, which made the exhibits due by Wednesday July 16, 2003. Instead of producing the trial exhibits on this date, C & K produced a motion requesting further time to file its exhibits. The court never granted this motion. Thus C & K was in violation of the Trial Order. On Thursday, July 17th, the court issued an order continuing the trial until September 11th.

▮ C & K states that its counsel spoke with Lisa Yerrace, a law clerk, and that she stated that since the trial was continued C & K did not have to file its exhibits on July 16. Even if the court were to assume that this was true, this argument is unavailing to C & K. As the Sixth Circuit stated in *Lawrence v. Int'l Bhd. of Teamsters*, 320 F.3d 590 (6th Cir. 2003), clerks and court personnel work for the court, they are not the court. *Id.* at 594. Approval of the court is required to continue a deadline, not approval of one of its employees. Moreover, this would be after the delay necessitating the trial continuance.

▮ One of the original purposes of Rule 16, as incorporated by Bankruptcy Rule 7016, was to promote familiarity with the issues actually involved in the lawsuit "so that parties can accurately appraise their cases and substantially reduce the danger of surprise at trial." 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1522, at 218 (1990). By failing to submit its trial exhibits after LTV entered its exhibits, C & K created a fundamental imbalance in the equities of pretrial preparation. C & K has now had months with LTV's exhibits to prepare for the hearing whereas LTV has yet to see C & K's exhibits. Moreover, C & K should, at the least, have been prepared to submit its exhibits by July 17th, the date at which C & K's request for extension of time to file exhibits said that it would be prepared to submit such exhibits. This evidences that C & K chose not to give its exhibits to LTV in order to allow LTV to prepare for trial, even though months have passed since the original date of the hearing. This demonstrates bad faith on the part of C & K and an attempt to gain an impermissible advantage at the hearing.

▮ Courts have broad discretion to impose sanctions for a violation of scheduling orders. *See e.g. Clarksville–Montgomery County School System v. United States Gypsum Co.*, 925 F.2d 993 (6th Cir.1991); *Estes v. King's Daughters Med. Ctr.*, 59 Fed.Appx. 749 (6th Cir.2003). Courts confronted with noncompliance with a pretrial order frequently dismiss the noncomplying party's cause of action. *See In re McDowell*, 163 B.R. 509 (Bankr. N.D.Ohio 1994); *Schilling v. O'Bryan (In re O'Bryan)*, 246 B.R. 271 (Bankr.W.D.Ky. 1999). Although LTV urges the court to dismiss C & K's claim due to its failure to comply with the Trial Order, such a com-

prehensive sanction should be avoided if possible. It could strainingly be argued, due to the language of the trial order, that C & K was only in violation of the Trial Order for one day. The argument would be that since the trial order mandates that exhibits be filed three working days before trial, when the trial was continued until September 11th the due date for the exhibits was moved to September 8th. The exhibits were due on July 16th and the trial was continued on July 17th. Thus, the argument would be that C & K was only noncompliant with the Order for one day, July 17th. The wording of the Trial Order could have led C & K to believe that its exhibits were not due until three working days before the new hearing date. Although this is an interpretation that strains logic, the court finds that dismissal of C & K's claim for violation of the Scheduling and Trial Order is not required.

### Conclusion

Based on the foregoing, LTV's combined motion to dismiss for delay, discovery abuse, and failure to comply with scheduling orders is hereby denied, but relief is ordered. C & K shall not offer any evidence of its third party price rates at the hearing on the objection to its claim nor make any argument relating thereto or allege that LTV received favorable rates. LTV's Motion in Limine regarding Third Party Price Rates and Rule 1006 Summary of Price Rates is moot. In reaching this conclusion, the court has considered all arguments of the parties, whether or not specifically addressed in this Memorandum of Decision.