[Cite as *Hall v. Gilbert*, 2014-Ohio-4687.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 101090**

---

# JAMES W. HALL

PLAINTIFF-APPELLANT

vs.

# EDWARD L. GILBERT, ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-10-730009

**BEFORE:** Rocco, P.J., Kilbane, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** October 23, 2014

**ATTORNEYS FOR APPELLANT**

Eric R. Fink
James R. Silver
217 N. Water Street
Kent, Ohio   44240


**ATTORNEYS FOR APPELLEES**

Elaine Tso
Joseph F. Nicholas, Jr.
Mazanec, Raskin, Ryder & Keller Co.
100 Franklin's Row
34305 Solon Road
Solon, Ohio   44139

KENNETH A. ROCCO, P.J.:

{¶1} In this action alleging legal malpractice, plaintiff-appellant James Hall appeals from the trial court's decision to grant the motion for summary judgment that defendants-appellees Marc P. Gertz and his law firm, Goldman & Rosen, Ltd., filed, thus terminating Hall's case against appellees.

{¶2} Hall presents a single assignment of error. He asserts that summary judgment in appellees' favor on his claim was unwarranted. However, Hall supports his assertion with two additional arguments, i.e., (1) the trial court applied an incorrect legal standard to his claim, and (2) the trial court improperly required him to submit an expert's report regarding the amount of damages that he sustained as a result of appellees' alleged legal malpractice.

{¶3} Upon a review of the record, this court finds Hall's assertion is unsupported and his arguments lack merit. The trial court's order, consequently, is affirmed.

{¶4} The record reflects that in 1998, Hall hired attorney Edward L. Gilbert to represent him in pursuing a discrimination action in federal district court against his employer, Consolidated Freightways ("CF"). Gilbert's efforts on Hall's behalf proved successful. In 2000, Hall obtained a jury verdict in his favor in the action in the amount of $50,000.00 compensatory damages and $750,000.00 in punitive damages. The federal district court then applied the "Federal Statutory Caps" to the verdict, reducing Hall's judgment to $300,000.00 plus $2,400.00 in lost wages. The federal district court also

awarded Hall attorney fees and costs in the amount of $147,254.90, thus rendering a judgment against CF in Hall's favor in the amount of $449,654.90.

{¶5} Both CF and Hall filed notices of appeal of the judgment in the federal appeals court. In February 2001, CF posted a supersedeas bond with the federal appeals court in the amount of $450,135.00, which was enough to cover the district court's judgment, to prevent Hall from executing on any part of the judgment during the pendency of the appeals.

{¶6} In September 2002, after the federal appeals court heard oral arguments in Hall's case, CF filed a Chapter 11 petition for bankruptcy in the United States Bankruptcy Court in the Central District of California. Pursuant to 11 U.S.C. 362, all proceedings against CF, including the appeals in Hall's case, were automatically stayed.

{¶7} Gilbert indicated to Hall that the bankruptcy proceeding presented matters beyond his expertise; therefore, Gilbert recommended that Hall obtain the help of attorneys who specialized in bankruptcy law. Gilbert suggested appellees. Hall acquiesced with Gilbert's recommendation, leaving all communications with appellees in the matter to Gilbert.

{¶8} After appellees accepted Hall's case from Gilbert, appellee Marc Gertz took primary responsibility for it. In December 2002, one of the first acts that Gertz performed on Hall's behalf in bankruptcy court was to file a "proof of claim." Gilbert supplied "round figures" for Hall's claim. Thus, in filling out the form, Gertz placed on

it as the "Total Amount of [Hall's] Claim at Time [the bankruptcy] Case [was] Filed" the sum of "$300,000.00 plus fees and costs."

{¶9} At his deposition, Gertz testified that he was aware when he filed Hall's proof of claim form that Hall had appealed from the district court's reduction of the jury's verdict, but at the time, "this was the amount which was the judgment amount" in Hall's case against CF. Gertz testified that the amount could be amended without leave of the bankruptcy court.

{¶10} Gertz also testified that, soon after he filed Hall's claim in bankruptcy court, Gilbert inquired of appellees about the possibility of lifting the bankruptcy stay with respect to Hall's case in the federal appeals court. According to Gilbert, Hall needed money. Acting on Gilbert's inquiry, Gertz engaged in negotiations with CF's counsel in early 2003 about the possibility.

{¶11} Gertz stated that he understood that an unlimited relief from the stay "was never on the table," because CF would never agree to "allow[ Hall] to go outside of the bankruptcy and go after [CF's] assets." Therefore, appellees instead sought a limited relief. At Gilbert's urging, appellees focused on the funds represented by the supersedeas bond CF posted in federal court to appeal from Hall's judgment.

{¶12} In May 2003, after approximately six months of negotiation with CF's counsel, appellees worked out an agreement for a limited lift of the automatic bankruptcy stay of proceedings. Appellees and CF drafted a document that set forth the agreement's terms. The document was entitled "Stipulation with J. Hall for Limited Relief from

Automatic Stay." Gertz testified that he explained the terms of the agreement to Gilbert and Hall via a conference call. After this conversation, appellees filed a motion in bankruptcy court on Hall's behalf seeking a limited lift of the automatic stay. In June 2003, CF then filed in bankruptcy court a "proposed order" outlining the parties' stipulation for the judge to sign.

{¶13} In pertinent part, the stipulation contained the following facts: (1) it was entered into between CF and James Hall, "by and through their respective counsel"; (2) Hall had obtained a jury verdict in his favor in federal district court against CF on claims for racial discrimination and civil rights violations, but the district court entered an order on post-trial motions that amended the judgment to reduce the damages to $302,400.00; (3) CF filed an appeal of the judgment and executed a bond in the amount of $450,135.00 that was "sufficient to pay the Judgment" in the event that CF lost the appeal; (4) after CF petitioned for bankruptcy, CF filed for an automatic stay in the appellate court; (5) Hall filed a proof of claim in CF's bankruptcy proceeding; and (6) Hall filed a motion in bankruptcy court for relief from the stay.

{¶14} The stipulation also contained the following relevant agreements: (1) CF agreed to "limited relief from the Automatic Stay" in Hall's case to allow the federal appellate court to render its decision; (2) in the event that the federal appellate court decided in Hall's favor, Hall would "seek payment of the Judgment Amount * * * solely from the surety of the Bond"; (3) Hall, "on behalf of himself and his heirs, representatives and assigns," in consideration for relief from the automatic bankruptcy

stay, "expressly waive[d] and release[d] any right he has or might assert to recover from [CF] * * * or [its] assets (other than the Bond) any portion of the Judgment Amount or any other amounts arising from or relating to the Judgment or the Appeal"; and (4) Hall's "Proof of Claim [wa]s hereby deemed to be withdrawn * * * ." The stipulation bore the signatures of Gertz and CF's counsel.

{¶15} On June 20, 2003, the bankruptcy judge affixed his signature to the stipulation. The limited lift of the stay permitted the federal appeals court to proceed with its decision in Hall's case against CF. On July 25, 2003, the appeals court decided in Hall's favor. The appeals court reinstated the jury's verdict in the amount of $800,000.00, and did not disturb the district court's award of attorney fees and costs to Hall.

{¶16} Pursuant to the stipulation, the $450,135.00 in funds from the supersedeas bond were released. Gilbert deducted from that amount what he determined were due to him for attorney fees and costs in pursuing Hall's case against CF. He presented a "disbursement" check to Hall for the balance, i.e., $214,795.59. Hall cashed the check. Subsequently, despite the terms of the bankruptcy court stipulation, Gilbert sought to claim additional funds in bankruptcy court on Hall's behalf. On September 18, 2006, the bankruptcy court issued a "cease and desist" order against Gilbert and Hall.[1]

---

[1]At oral argument in this case, Hall's appellate counsel informed the panel that the bankruptcy proceeding had not yet concluded.

{¶17} In 2008, Hall filed a legal malpractice action against Gilbert and appellees in the Cuyahoga County Court of Common Pleas. Hall thereafter voluntarily dismissed the action, but refiled it on June 23, 2010 pursuant to the "savings statute."

{¶18} Appellees eventually filed a motion for summary judgment with respect to Hall's claim. Appellees argued that Hall could not establish either that they breached any duty they owed to him or that he suffered any damages from their representation of him in the bankruptcy action. In support of their arguments, appellees filed in the trial court copies of deposition transcripts, letters and emails exchanged between the parties to the bankruptcy proceeding, and copies of the relevant bankruptcy and federal court documents. Appellees also noted that Hall's expert refused to opine in his report that appellees' actions or omissions, even if they constituted legal malpractice, "would have been successful or resulted in a larger recovery [against CF] by Mr. Hall."

{¶19} Hall filed an opposition brief, arguing that summary judgment in appellees' favor was inappropriate. In support of his argument, he attached his affidavit, in which he averred in relevant part that: (1) he "never had discussions with [appellees] or Gilbert regarding the filing of a Stipulated Lift of Stay in the Bankruptcy Court, limiting damages against [CF];" (2) he "never consented to the Stipulation to release the Stay in the [CF] Bankruptcy Case," and, (3) he believed that the "disbursement" check was a "partial payment" for his award against CF and that he would receive additional monies from his judgment against CF "until after July 11, 2006."

{¶20} On August 15, 2011, the trial court issued a judgment entry granting summary judgment in appellees' favor on Hall's legal malpractice claim. The trial court stated in pertinent part as follows:

> As set forth in *Environmental Network Corp. v. Goodman, Weiss, Miller, L.L.P.*, 119 Ohio St.3d 209, 211 (Ohio,2008), "[T]o establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show that the attorney owed a duty or obligation to the plaintiff, that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and that there is a causal connection between the conduct complained of and the resulting damage or loss."
>
> The court finds that Plaintiff has failed to prove any resulting damage or loss as set forth under the third prong [of] *Environmental Network Corp., supra.* Although Plaintiff has submitted an expert report, said report is insufficient to show resulting damage or loss. While the expert report may be, at best, instructive as to the elements of malpractice, the report nevertheless stops short of making any connection to damages. Specifically, the report states in pertinent part,
>
> "I am not indicating that the action taken (i.e., filing a motion for relief from stay with an agreement to limit recovery if successful) or that the action not taken (i.e.,not pursuing the bankruptcy debtor for the full recovery) would have been successful or resulted in a larger recovery for Mr. Hall." (Report of Michael T. Gunner, pg. 5)
>
> For this reason, Plaintiff failed to satisfy the standard as set forth by the Ohio Supreme Court in *Environmental Network Corp., supra*, and Defendants' motion for summary judgment is granted * * * .

{¶21} When the trial court entered a final order, Hall appealed from the judgment in appellees' favor on ⌐laim. He presents the following assignment of error.

I. The trial court erred in granting Appellees' motions [sic] for summary judgment.

{¶22} Hall asserts that summary judgment in appellees' favor on his claim was unwarranted. However, H pports his assertion with two additional arguments, i.e., (1) the trial court applied an incorrect legal standard to l

claim, and (2) the trial court improperly required his expert to state the amount of damages that he sustained as result of appellees' alleged legal malpractice.

{¶23} A party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. *Id.* However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.* Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

{¶24} In this case, appellees asserted that the evidence demonstrated that Hall could not support his claim against them. In order to establish a claim of legal malpractice based on negligent representation, the plaintiff must demonstrate (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation in that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss. *Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164 (1997), at syllabus.

"[T]he requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case." *Id.* at 427-428.

{¶25} The evidence presented to the trial court in this case established the first requirement. Gertz acknowledged that appellees had been hired to represent Hall for purposes of CF's bankruptcy proceeding. The difficulty for Hall comes in the lack of evidence to establish the other two requirements for his claim. Although Hall makes several assertions in his appellate brief to this court concerning appellees' "breaches of duty" in their representation of him, none of his assertions has any foundation in the evidence.

{¶26} Hall presented no evidence to prove that Gertz breached a duty by limiting the proof of Hall's claim against CF in bankruptcy court to "$300,000 plus fees and costs." Gertz testified that he limited the claim to the amount of the actual judgment rendered by the district court because to do otherwise would be "a violation of federal law in terms of filing a false proof of claim." Gertz further testified that, should Hall ultimately prevail in his appeal of the district court's reduction of the jury award against CF, the proof of claim amount in bankruptcy court could be amended. Hall's expert did not find that Gertz's decision on this matter constituted legal malpractice.

{¶27} Hall also failed to establish that appellees breached a duty by entering into the stipulation with CF to lift the bankruptcy stay so that Hall could collect the money from the supersedeas bond in satisfaction of his judgment. Gertz testified that Gilbert encouraged appellees to negotiate limited relief from the stay of proceedings in the

federal appeals court in order for Hall "to get some money in his pocket" which "Gilbert indicated was very important to Mr. Hall." Gertz recollected that appellees discussed their strategy with Gilbert on the telephone and that "Gilbert indicated Mr. Hall was present when that decision was made and * * * he * * * accorded with the decision." Michael Steel, who worked with Gertz on Hall's case, testified that CF's bankruptcy proceeding remained ongoing as of the date of his deposition, i.e., April 21, 2011. Thus, even eight years after the jury's verdict in Hall's favor against CF, the federal court would have remained unable to render a decision in his appeal of the district court's reduction of that verdict.

{¶28} Despite Gertz's and Gilbert's recollection that Hall understood the ramifications of the stipulation with CF for a limited lift of the stay of proceedings in the federal appeals court, Hall's expert believed that appellees had not adequately obtained Hall's "informed consent" prior to entering into the stipulation. This was the extent to which Hall's expert opined that appellees' "conduct did not arise to the conduct that is expected of similar counsel in similar situations."

{¶29} Nevertheless, Hall's expert did not attribute any particular damages to this purported lapse on appellees' part. The trial court determined that, under these circumstances, Hall failed to establish the third requirement for a successful legal malpractice claim against appellees. Although Hall asserts the trial court applied an improper analysis in making such a determination, this court disagrees.

**{¶30}** The trial court applied the analysis set forth by the Ohio Supreme Court in

*Environmental Network Corp. v. Goodman, Weiss & Miller, L.L.P.*, 119 Ohio St.3d 209,

2008-Ohio-3833, 893 N.E.2d 173, which stated in pertinent part as follows:

> In *Vahila*[, 77 Ohio St.3d 421, 674 N.E.2d 1164 (1997)], the plaintiffs' lawsuit arose from the defendants' conduct in representing the plaintiffs in several civil matters and in representing Terry Vahila with respect to criminal charges and in an investigation of her by the Ohio Department of Insurance. *Id.*, 77 Ohio St.3d at 422, 674 N.E.2d 1164. The claimed malpractice consisted of defendants' "failure * * * to properly disclose all matters and/or legal consequences surrounding the various plea bargains entered into by Terry Vahila and the settlement arrangements agreed to by [plaintiffs] with respect to the several civil matters." *Id.* at 427, 674 N.E.2d 1164. The plaintiffs alleged losses of $100,000 and lost profits of at least $200,000. *Id.* at 422, 674 N.E.2d 1164. Based on the theory that plaintiffs proposed, we held that "given the facts of [the] case, [plaintiffs] have arguably sustained damage or loss regardless of the fact that they may be unable to prove that they would have been successful in the underlying matter(s)." *Id.* at 427, 674 N.E.2d 1164.

> Thus, we recognized that "the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case." *Id.*, 77 Ohio St.3d at 427-428, 674 N.E.2d 1164. The *Vahila* court determined that "depending on the situation, [a plaintiff may be required] to provide some evidence of the merits of the underlying claim," but declined to "endorse a blanket proposition that requires a plaintiff to prove, *in every instance*, that he or she would have been successful in the underlying matter." (Emphasis added.) *Id.* at 428, 674 N.E.2d 1164.

The language quoted above shows that the court rejected a wholesale adoption of a "but for" test for proving causation and the mandatory application of the "case-within-a-case doctrine." The doctrine, also known as the "trial-within-a-trial doctrine," provides that "[a]ll the issues that would have been litigated in the previous action are litigated between the plaintiff and the plaintiffs (sic) former lawyer, with the latter taking the place and bearing the burdens that properly would have fallen on the defendant in the original action. Similarly, the plaintiff bears the burden the plaintiff would have borne in the original trial; in considering whether the plaintiff has carried that burden, however, the trier of fact may consider whether the defendant lawyer's misconduct has made it more difficult for the plaintiff to prove what would have been the

result in the original trial." Restatement of the Law 3d, Law Governing Lawyers (2000) 390, Section 53, Comment b.

However, in holding that not every malpractice case will require that the plaintiff establish that he would have succeeded in the underlying matter, the *Vahila* court necessarily implied that there are some cases in which the plaintiff must so establish. * * *

Here, appellees' sole theory for recovery is that if the underlying matter had been tried to conclusion, they would have received a more favorable outcome than they obtained in the settlement. Therefore, unlike the plaintiffs in *Vahila*, who sustained losses regardless of whether their underlying case was meritorious, appellees here could recover only if they could prove that they would have succeeded in the underlying case and that the judgment would have been better than the terms of the settlement. Thus, the theory of this malpractice case places the merits of the underlying litigation directly at issue because it stands to reason that in order to prove causation and damages, appellees must establish that appellant's actions resulted in settling the case for less than appellees would have received had the matter gone to trial.

This type of legal-malpractice action, then, involves the case-within-a-case doctrine. That is, the plaintiff must establish that he would have been successful in the underlying matter. In this type of action, it is insufficient for the plaintiff to present simply "some evidence" of the merits of the underlying claim. * * * Thus, in the case sub judice, appellees had the burden of proving by a preponderance of the evidence that but for appellant's conduct, they would have received a more favorable outcome in the underlying matter. * * *

* * *

Although appellees put forth some evidence of the merits of their underlying claim, they failed to establish by a preponderance of the evidence that they would have had a better result if the matter had gone to trial. In fact, the uncontroverted evidence was that the settlement that appellant procured for appellees was very favorable. Thus, there is no reason to believe based on the admitted evidence that a reasonable fact-finder in the underlying matter would have awarded a judgment more favorable than the settlement.

Appellees, therefore, did not show that but for appellant's malpractice, they would have received a better result if the underlying action had been tried in full. Because appellees failed to prove by a preponderance of the evidence that appellant's malpractice was the proximate cause of any loss, appellant was entitled to a judgment * * * .

(Underscoring added.)

**{¶31}** Similarly, in this case, Hall failed to establish that he would have had a better outcome than obtaining the amount of the supresedeas bond had he waited until CF's bankruptcy proceeding had concluded. CF remained in bankruptcy court as of at least April 2011; therefore, Hall's appeal would have remained stayed. Moreover, even had the federal appellate judgment in Hall's favor been rendered, as Steel put it,

> * * * Mr. Hall would have had a proof of claim filed [that] could have subsequently been amended, but * * * he would be treated just as a general unsecured creditor and wait in line with other general unsecured creditors until there would have been a distribution.

**{¶32}** At the time of Steel's deposition, he remained unsure that Hall would have been awarded any part of such a distribution. Gertz testified to the same effect, stating:

> * * * [T]he result that was ultimately obtained in that fashion worked greatly to Mr. Hall's advantage. Mr. Hall got money then. He got a sum certain then.

> * * * [Even] [h]ad the appeal been successful, Mr. Hall would still be an unsecured creditor, perhaps for a greater amount but for an unsecured creditor waiting to see whether or not there would be any distribution from [the CF] estate eight years later.

> * * *

> * * * [In addition, there's] a palpable risk that * * * had the company that issued the bond gone out of business or lost its funding, then [even] those funds would no longer have been available.

**{¶33}** In addition to the foregoing evidence, Hall's expert, too, could not opine that appellees' actions would have "resulted in a larger recovery" for Hall. *Eastminster Presbytery v. Stark & Knoll*, 9th Dist. Summit No. 25623, 2012-Ohio-900 (client failed to demonstrate that negligence on the part of the attorneys, if any, proximately caused a

judgment against the client in an underlying declaratory judgment action; such proof was necessary to establish malpractice because the client's claims put the merits of the underlying case directly at issue); *compare C&K Indus. Servs. v. McIntyre, Kahn & Kruse Co., L.P.A.*, 2012-Ohio-5177, 984 N.E.2d 45 (client's expert opined that counsel should have advised client to renegotiate its contract with bankruptcy debtor, because client would have obtained a higher hourly rate and been awarded that amount for services benefitting the bankruptcy estate). The trial court, therefore, applied the appropriate analysis to the evidence presented in this case.

{¶34} Consequently, Hall's assignment of error is overruled. The trial court's order is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
PATRICIA ANN BLACKMON, J., CONCUR