[Cite as *Niederst v. Kohrman Jackson & Krantz, L.L.P.*, 2022-Ohio-2579.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

BRENDA NIEDERST, ET AL.,  :

     Plaintiffs-Appellants,  :

                                   No. 110913

     v.  :

KOHRMAN JACKSON
& KRANTZ, L.L.P., ET AL.,  :

     Defendants-Appellees.  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 28, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-943747

---

### *Appearances:*

Burkes Law, LLC, and John F. Burke, III, *for appellants*.

Reminger Co., L.P.A., Holly Marie Wilson, and Brianna
Marie Prislipsky, *for appellees*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Plaintiffs-appellants, Wynn Investments, L.L.C. and Brenda Niederst ("Brenda") (collectively "Appellants"), appeal an order granting summary judgment in favor of defendants-appellees, Korhman, Jackson & Krantz, L.L.P. ("KJK") and

several lawyers of that firm, who were also named as defendants. Brenda claims the following error:

> The trial court erred when it granted summary judgment to defendants-appellees.

{¶ 2} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Appellants retained KJK and its attorneys to represent their interests in litigation brought against them by Mark Niederst ("Mark") and Niederst Portage Towers, L.L.C. The dispute involved a disagreement between Brenda and her brother, Mark, over their respective obligations relating to their joint ownership of two apartment buildings known as "Portage Towers" and "Cross Creek." Through private mediation, the parties reached a settlement on December 5, 2016, wherein they agreed to divide the properties at issue, with Brenda receiving the entire interest in Cross Creek, and Mark receiving the entire interest in Portage Towers along with a payment from Brenda in the amount of $650,000. *Niederst v. Niederst*, 2018-Ohio-5320, 128 N.E.3d 800 (9th Dist.).

{¶ 4} The parties' settlement agreement outlined the general terms of the agreement with the understanding that the parties would enter into a more definitive agreement within seven days, at which time they would execute and record the deeds to complete the transfers of real estate and dismiss the case with prejudice. Approximately one month later, in January 2017, Mark filed a motion to enforce the settlement, alleging that Brenda refused to sign the more definitive

settlement agreement. Following a hearing, the parties entered into a new settlement agreement that provided a timeline for performance and designated a closing date for the transfer of properties.

{¶ 5} The parties' settlement agreement required Mark and Brenda to transfer their interests in both properties under section 1031 of the Internal Revenue Code, 26 U.S.C. 1031, which provides a narrow exception to the general rule that taxpayers are required to recognize all gains from the sale or exchange of property in the year of realization. Thus, the parties and their lawyers had to consider the tax consequences resulting from the transfer of the properties, which were of disparate value, while negotiating the transaction.

{¶ 6} In February 2017, Mark filed another motion to enforce the settlement agreement against Brenda, who had still not signed the more definitive statement of the agreement. This time, Mark requested sanctions and attorney fees. Although the closing date had not yet passed, Mark argued that Brenda failed to cooperate by refusing to sign loan-extension documents, which were needed because Portage Towers was then in default. In response, Brenda argued that she was excused from performance because Mark, himself, had breached the settlement by failing to timely transfer employee files, bank stubs, and his interest in two money-market accounts.

{¶ 7} Following a hearing, a magistrate found that Brenda had breached the settlement agreement by failing to sign the loan-extension documents for the mortgage on Portage Towers. As a result of the breach, the magistrate found that

Mark was entitled to attorney fees and bank fees totaling $46,204.06. The magistrate did not award sanctions against Brenda because her motive for withholding the signature on the loan documents was "unclear." *Niederst*, 2018-Ohio-5320, 128 N.E.3d 800, at ¶ 6.

{¶ 8} Both Brenda and Mark filed objections to the magistrate's decision. Brenda objected to the magistrate's failure to find that Mark materially breached the settlement agreement, the magistrate's finding that Mark was damaged by Brenda's breach, and the magistrate's finding that Mark was entitled to $11,176.45 in damages for bank fees. *Id.* Mark objected to the magistrate's finding on damages, arguing that damages should also be awarded for attorney fees incurred from December 2016 through January 2017, for attending two hearings, and for sanctions due to Brenda's bad faith and repeated breaches. *Id.* The trial court adopted the magistrate's ruling, with a modification finding that Mark had been improperly awarded $11,176.45 in bank fees that were precluded by the agreement. *Niederst v. Niederst,* Summit C.P. No. CV-2016-07-3026, 2017 Ohio Misc. LEXIS 13399 (Oct. 12, 2017). The Ninth District affirmed the trial court's judgment. *Niederst*, 2018-Ohio-5320, 128 N.E.3d 800.

{¶ 9} Following the appeal, Brenda filed a legal malpractice action against KJK, alleging that various individually named attorneys at the firm failed to subpoena "essential documents," improperly drafted the settlement agreement, failed to call witnesses to testify, and failed to call Brenda as a witness in her own

defense. The complaint alleged that as a result of KJK's negligence, Brenda was forced to settle litigation with unfavorable terms that did not reflect her damages.

{¶ 10} Brenda dismissed her complaint against KJK without prejudice pursuant to Civ.R. 41(A) within a month of filing it and refiled the complaint shortly thereafter. At a case-management conference in March 2021, the court set the fact-discovery deadline for June 4, 2021, and plaintiff's expert report deadline for June 10, 2021. The court also granted the parties leave until July 19, 2021, to file dispositive motions.

{¶ 11} On June 8, 2021, four days after the fact-discovery deadline had passed and two days before Brenda's expert report deadline, Brenda filed a motion to extend her expert-report deadline, asserting that the parties had not yet completed fact discovery. KJK filed a response to the motion, requesting a similar extension of its expert deadline because it was still waiting for discovery responses from Brenda. The trial court denied both motions, noting that "all parties have been noncompliant with the discovery schedules" and that "neither side filed a motion to compel." (Journal entry dated June 12, 2021.) The court's journal entry further stated that the court would review the request to extend expert deadlines if the parties complied with the new dates set forth in the order.

{¶ 12} Both parties produced their outstanding discovery and filed a joint notice that discovery had been exchanged in compliance with the court order. Although the court had indicated that it would revisit the request to extend expert deadlines, Brenda did not file a renewed motion to extend her expert deadline. KJK

later filed a motion for summary judgment, arguing that Brenda could not support a claim for legal malpractice without expert testimony because the allegations set forth in her complaint described actions involving legal strategy that a layperson could not fully comprehend or appreciate without the assistance of an expert witness.

{¶ 13} Brenda opposed the motion for summary judgment, arguing that expert testimony was not necessary to maintain her legal-malpractice claim because KJK's negligence was so obvious that it could be determined from the ordinary knowledge of a layperson. Brenda submitted an affidavit setting forth her own account of KJK's negligence in support of her brief in opposition to the motion for summary judgment. In her brief in opposition, Brenda argued, in relevant part:

> Here the undisputed facts contained in the Affidavit of Brenda Niederst clearly outline multitudes of failures of the defendants on numerous occasions, as outlined in the affidavit of Brenda Niederst, the defendants failed to follow the plaintiff's instructions, failed to conduct depositions, failed to communicate with plaintiffs and failed to obtain documents that would have demonstrated the fraud of Mark. Defendants were aware of this fraud yet failed to follow up and obtain the evidence requested by the plaintiff. They failed to conduct a single deposition or obtain any of the requested documents.
>
> These failures are clear and obvious legal malpractice which require no expert testimony.

(Plaintiff's brief in opposition to defendants' motion for summary judgment p. 19.)

{¶ 14} KJK moved to strike Brenda's affidavit, arguing it was not in compliance with Civ.R. 56(C) because it was improperly executed, relied on hearsay statements, and quoted extensively from materials that were not in the record. Brenda did not oppose the motion to strike, and the court granted the motion as

unopposed. (Journal entry dated Aug. 25, 2021.) Brenda later filed another affidavit that included copies of emails, financial statements, draft contracts, and other documents filed in the underlying lawsuit by KJK.

{¶ 15} At a subsequent pretrial conference, neither Brenda, or the parties jointly, suggested filing a joint motion to dismiss the case without prejudice, presumably to allow Brenda time to obtain an expert. Because Brenda had already voluntarily dismissed her case pursuant to Civ.R. 41(A), only a dismissal by the court would prevent a dismissal with prejudice. The court's docket indicates that the court granted the parties leave until September 20, 2021, to file the joint motion. (See journal entry dated Sept. 14, 2021.) No joint motion was ever filed. Consequently, on September 21, 2021, the court issued an order granting summary judgment in favor of KJK. Brenda now appeals the trial court's judgment.

## II. Law and Analysis

{¶ 16} In her sole assignment of error, Brenda argues the trial court erred in granting KJK's motion for summary judgment on her legal-malpractice claim.

{¶ 17} We review a trial court's ruling on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). Once the moving party demonstrates entitlement to summary judgment, the burden shifts to the nonmoving party to produce evidence

related to any issue on which the party bears the burden of production at trial. Civ.R. 56(E). Summary judgment is appropriate when, after construing the evidence in a light most favorable to the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

{¶ 18} To prevail on a legal malpractice claim, the plaintiff must establish "(1) an attorney-client relationship, (2) professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, (5) and damages." *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, 887 N.E.2d 1167, ¶ 8, citing *Vahila v. Hall*, 77 Ohio St.3d 421, 427, 674 N.E.2d 1164 (1997). Because the elements of a legal-malpractice claim are stated in the conjunctive, the failure to establish any one element of the claim is fatal. *Estate of Hards v. Walton*, 8th Dist. Cuyahoga No. 93185, 2010-Ohio-3596, ¶ 7; *Williams-Roseman v. Owen*, 10th Dist. Franklin No. 99AP-871, 2000 Ohio App. LEXIS 4254 (Sept. 21, 2000).

{¶ 19} It is undisputed that Brenda and KJK had an attorney-client relationship and that KJK owed her a professional duty arising from that relationship. KJK argued in its motion for summary judgment that Brenda could not establish that KJK breached its professional duty to her without expert testimony. As a general rule, legal malpractice must be established with expert testimony. *Bloom v. Dieckmann*, 11 Ohio App.3d 202, 203, 464 N.E.2d 187 (1983).

> Except in unusual circumstances, an action in legal malpractice may not be maintained without expert testimony that supports the

> plaintiff's theory that his attorney failed to exercise the standard of care ordinarily exercised by attorney in handling the matter in question.

*Rice v. Johnson*, 8th Dist. Cuyahoga No. 63648, 1993 Ohio App. LEXIS 4109, 5 (Aug. 26, 1993); *see also Kent's Excavating Servs. v. Leneghan*, 8th Dist. Cuyahoga No. 104820, 2017-Ohio-1371, ¶ 16, citing *C&K Indus. Servs. v. McIntyre, Kahn & Kruse Co., L.P.A.*, 2012-Ohio-5177, 984 N.E.2d 45, ¶ 34 (8th Dist.) and *McInnis v. Hyatt Legal Clinics*, 10 Ohio St.3d 112, 113, 461 N.E.2d 1295 (1984) ("Generally, in order to survive summary judgment in a claim of legal malpractice, the plaintiff must provide expert testimony in order to demonstrate the breach of an attorney's standard of care.").

{¶ 20} "Expert testimony is required so that the trier of fact does not have to speculate on the standard of care, particularly in a complex case involving real estate transactions which are normally not within the realm of understanding of the layman." *Northwestern Life Ins. Co. v. Rogers*, 61 Ohio App.3d 506, 512, 573 N.E.2d 159 (10th Dist.1989).

{¶ 21} Brenda argues expert testimony was not necessary in this case because the malpractice was so clear and obvious that it could be determined from the ordinary knowledge of a layperson. Indeed, where the claimed malpractice is "so simple and obvious," expert testimony is not required to demonstrate the breach of the attorney's standard of care. *Kent's Excavating Servs.*, 8th Dist. Cuyahoga No. 104820, 2017-Ohio-1371, ¶ 16, citing *Hirschberger v. Silverman*, 80 Ohio App.3d

532, 538, 609 N.E.2d 1301 (6th Dist.1992); *Cross-Cireddu v. Rossi*, 8th Dist. Cuyahoga No. 77268, 2000 Ohio App. LEXIS 5480 (Nov. 22, 2000).

{¶ 22} Brenda relies on *Harris v. Rossi*, 2018-Ohio-4573, 123 N.E.3d 284 (11th Dist.), and *Estate of Hards v. Walton*, 8th Dist. Cuyahoga No. 93185, 2010-Ohio-3596, in support of her argument that expert testimony was not necessary to establish her legal-malpractice claim against KJK. In *Harris*, plaintiffs filed a legal-malpractice action against their attorney, alleging the attorney negligently failed to notify them of the dismissal of their case and of their right to appeal before the notice of appeal deadline had passed. In *Walton*, the plaintiff sued her attorney, alleging that he negligently failed to file a response to a motion for judgment on pleadings, "causing the court to grant it as unopposed." *Walton* at ¶ 1. In both cases, the alleged malpractice arose from the attorneys' failure to meet court deadlines, for which there was no strategic justification, and the courts found that expert testimony was not necessary to establish the malpractice in those cases.

{¶ 23} Niederst's allegations of malpractice are more complex than merely missing a court deadline. Her allegations of malpractice involve tactical decisions such as whether to call certain witnesses, what documents to request in discovery, and whether to pursue a fraud claim in the midst of contentious litigation and settlement negotiations. Evaluating the propriety of such decisions is more complicated than determining whether an attorney missed a deadline and are beyond the knowledge of a layperson. Niederst needed expert testimony in order to establish her claim that KJK committed legal malpractice and Niederst's affidavit,

by itself, was not sufficient. Therefore, the trial court properly granted summary judgment in favor of KJK.

{¶ 24} Niederst blames the trial court's narrow discovery schedule for her failure to produce an expert. However, "[a] trial court has discretion to set a deadline by which the parties have to disclose their expert witnesses and to enforce its order by excluding all testimony from experts not disclosed by the deadline." *Huffman v. Pioneer Basement Water Proofing Co.*, 5th Dist. Tuscarawas No. 2007 AP 08 0048, 2008-Ohio-7032, ¶ 33, citing *Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged*, 15 Ohio St.3d 44, 45-46, 472 N.E.2d 704 (1984), and *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 84-85, 482 N.E.2d 1248 (1985).

{¶ 25} Niederst did not request an extension of the expert report deadline until after the discovery deadline had already passed and the expert deadline was four days away. Although the trial court initially denied her request for an extension, it noted that it would reconsider the request if the parties completed discovery by new dates set forth in the court's order. Although the parties completed fact discovery by the new deadlines, Niederst never filed a second motion to extend the discovery deadlines. Therefore, it cannot be said that Niederst's failure to produce an expert report was the trial court's fault.

{¶ 26} Niederst did not have the expert testimony necessary to establish her legal malpractice action against KJK. Therefore, the trial court properly granted summary judgment in favor of KJK.

{¶ 27} The sole assignment of error is overruled.

{¶ 28} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MARY J. BOYLE, J., CONCURS;
MARY EILEEN KILBANE, P.J., DISSENTS (WITH SEPARATE ATTACHED OPINION)

MARY EILEEN KILBANE, P.J., DISSENTING:

{¶ 29} I respectfully dissent and would reverse the trial court's grant of summary judgment because of multiple questions of fact.